**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jsmith@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL SMITH, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>LEROCHE BENICOEUR d/b/a CONCEIVEEASY<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Rachel Smith brings this action on behalf of herself, and all others similarly situated against Defendant LeRoche Benicoeur d/b/a ConceiveEasy.

## INTRODUCTION

1.     Defendant LeRoche Benicoeur d/b/a ConceiveEasy ("ConceiveEasy") is a fertility supplement company that peddles false hope to people who are trying to have children.

2.     Conception can sometimes be difficult, and modern interventions — while sometimes effective — can be expensive.  So it's not surprising that some people would consider supplements as a possible way to improve the chances of conception.  Deceptive claims about fertility supplements can play on the emotions of individuals who are struggling to conceive.

3.     At best, bogus fertility supplements give false hope and are a waste of time and money.  At worst, they can result in harmful side effects.

4.     Fertility supplements that falsely imply they can improve the chances of conception can also potentially harm consumers who use these products instead of seeking effective treatments, such as drugs or assisted reproductive technology approved by the U.S. Food and Drug Administration ("FDA").

5.     The FDA has not approved fertility supplements as a method for increasing the chances of conception.

6.     The fertility supplement industry is facing booming growth, due in part to declining fertility rates.  The fertility supplement market was estimated at USD $1.7 billion in 2020 and is expected to grow to $2.6 billion by 2026.[1]

7.     ConceiveEasy preys on people having difficulties conceiving.  ConceiveEasy markets and sells an "all-in-one kit to help you get pregnant," which includes "Advanced Conception" pills made from a "unique & all-natural blend of ingredients" that ConceiveEasy claims will "improve your chances of conception from the very first use."  ConceiveEasy tells its customers that by taking its product they will "Get pregnant fast! 100% Naturally."

8.     Taking ConceiveEasy supplements do not improve the chances of conception, even though that is the product's only purported purpose.  In short, ConceiveEasy is a sham.

---

[1] https://www.expertmarketresearch.com/reports/fertility-supplements-market

9.      On May 20, 2021, the Food and Drug Administration (FDA) sent ConceiveEasy and its CEO Mary Whittaker a warning letter stating that their product was being sold as a misbranded drug, and was not recognized as safe and effective for treating problems that people may face when trying to conceive.  Despite the FDA's warning, Defendant continues to exploit people who wish to conceive by selling them a worthless product that does not improve the chances of conception.

10.     It gets worse.  The products can only be purchased by signing up for a monthly subscription that costs $40 per month, with automatic monthly billing.  However, as alleged in more detail below, ConceiveEasy violates California's automatic renewal laws by failing to comply with notice requirements and by making it difficult to discontinue the automatic billings.

11.     Therefore, Plaintiff has filed this class action on behalf of herself and other U.S. purchasers of ConceiveEasy.  She seeks actual damages, restitution, punitive damages, injunctive relief, and all other relief available under the causes of action asserted here.

**PARTIES**

12.     Plaintiff Rachel Smith is domiciled in California.  On May 21, 2021, she purchased a ConceiveEasy starter kit for approximately $40.  Ms. Smith purchased the products directly from Defendant.  Before purchasing the product, Ms. Smith reviewed and relied on the representations made on ConceiveEasy's website stating that the product would improve the chances of conception.  Based on the product name and information disclosed on the website, Ms. Smith believed that taking ConceiveEasy would improve her chances of conception.  It did not have that effect.  Had Ms. Smith known the truth about the product's ineffectiveness, she would not have purchased it.

13.     When Ms. Smith purchased ConceiveEasy products, Defendant did not clearly and conspicuously disclose that it intended to continue to bill her.  After the purchase, Defendant did not send an acknowledgement email confirming that it intended to bill her again each month.

14.     Defendant ConceiveEasy is a California corporation with its headquarters in Seaside, California.

## FACTUAL BACKGROUND

**I.     ConceiveEasy Is A Sham**

15.     ConceiveEasy operates a website at coneiveeasy.com ("the website").

16.     On that website, ConceiveEasy sells just one product: the ConceiveEasy "all-in-one kit to help you get pregnant," which it refers to as the "TTC Kit."

17.     The TTC Kit primarily contains supplement pills that are labeled ConceiveEasy "Advanced Conception Monthly Reproductive Support System." Each bottle contains 30 pills, and purchasers are instructed to take one a day.

18.     The ConceiveEasy website contains numerous false statements suggesting that taking the supplement pills will help with conception:

(a)     The supplement pills purportedly have "a unique & all natural blend of ingredients," that "help[] support your reproductive health to improve your chances of conception from the very first use."

(b)     "Naturally help get pregnant."

(c)     "Get pregnant fast!  100% Naturally"

(d)     "While many people see results with ConceiveEasy® in the very first month, each individual's reproductive cycles are unique. ConceiveEasy® is effective in increasing your chances of conception and supporting reproductive health."

(e)     "Once pregnancy is achieved, you may discontinue use of ConceiveEasy and begin taking a daily prenatal vitamin."

(f)     "2 million women used ConceiveEasy last year to get pregnant. Join them today!"

19.     The website also includes fake testimonials from people who claim they became pregnant from using the ConceiveEasy TTC Kit.

20.     The "about us" portion of the website also purports to identify several doctors affiliated with the company.  However, the information appears to be fake because the doctors cannot be found on the Federation of State Medical Boards' listings or even on LinkedIn.

21.     When someone receives a package of ConceiveEasy products, they learn that the packaging does not match the sophisticated, glossy, and professional look of the ConceiveEasy website.  Instead, the package and enclosed materials all have a chintzy look, as if put together by a fly-by-night business operating out of someone's garage, using a cheap home office printer to print bottle labels, instructions, and other pamphlets enclosed with product.

22.     Moreover, none of the supplement pill ingredients are disclosed on the website.

23.     A consumer can only learn about the ingredients in the supplemental pills after they purchase a TTC Kit and receive the pills in the mail.  The pills contain a few ingredients commonly found in most garden-variety multi-vitamins, like folic acid, iron, and calcium.

24.     The ConceiveEasy supplement pills also contain a bizarre list of ingredients that one would expect to find in a medieval apothecary, such as: crushed honey bees (apis mellifica); desiccated thyroid glands of sheep or other unspecified livestock (thryoidinum); guelder rose, a flowering plant that produces mildly toxic berries (vibernum opulus); and various shrubs and conifers (sabina, agnus castus, thlapsi bursa pastoris).

25.     None of the above-listed ingredients, whether taken alone or in conjunction, can improve a person's chances of conception.  Alternatively, even if the ingredients could theoretically improve the chances of conception in sufficient doses, the amounts of the ingredients in the ConceiveEasy supplement pills are far too small to have any physiological effect.

26.     Plaintiff is not seeking to impose liability for Defendant's lack of substantiation for its claims, nor is Plaintiff's case based on a theory that Defendant's claims are unproven or subject to reasonable debate.  Instead, the crux of this case is that Defendant's claims that its ConceiveEasy supplements improve the chances of conception are provably false.

27.     Given that the ConceiveEasy products are worthless, Plaintiff and class members are entitled to a full refund.

**II.     ConceiveEasy Products Are Illegal To Sell Because They Are Sold As Drugs Without Prior Approval From The FDA**

26.     The Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301 *et seq.* (the "FFDCA" or the "Act"), as amended by the Dietary Supplement Health and Education Act of 1994,

Pub. L. No. 103–417, 108 Stat. 4325 ("DSHEA"), as well as the regulations implementing the FFDCA and DSHEA set forth the legal requirements for labelling and selling dietary supplements.

27.     These requirements are fully incorporated into California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq*. ("Sherman Law").  The Sherman Law is explicitly authorized by the FFDCA, 21 U.S.C. § 343-1.  The Sherman Law imposed identical requirements to the FFDCA, including the FFDCA's food labeling requirements.  *See* Cal. Health & Safety Code § 110100.  In turn, a violation of these requirements creates liability under the unlawful prong of California's UCL.

28.     Under the FFDCA, a "drug" is defined, in part, as an "article[] intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or an "article[] (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

29.     Under 21 U.S.C. §§ 331(d)[2] and 355(a)[3], the FDA must approve new drugs before they can be sold on the market.  Only then can a manufacturer make any claims that their product can treat, prevent, or cure a disease.  These claims are reserved for pharmaceutical products that have undergone years of extensive clinic, laboratory, and safety studies.  These studies are costly and can take decades to complete.  In light of these delays, the FFDCA creates an exemption from this pre-approval process for dietary supplements "intended to affect the structure or function of the body" if the dietary supplements carry a prominent FDA disclaimer on the product labels and advertising.

30.     Under these regulations, supplement companies like Defendant are prohibited from labeling, marketing, or selling dietary supplements bearing claims that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, [or that] characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain

---

[2] 21 U.S.C. § 331(d) ("The following acts and the causing thereof are prohibited: . . . The introduction or delivery for introduction into interstate commerce of any article in violation of section . . . 355 . . . of this title.").

[3] 21 U.S.C. § 355(a) ("No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval or application [is] filed[.]").

1   such structure or function" (known as "structure/function claims"), unless the label carries a

2   prominent disclaimer (the "DSHEA Disclaimer") on each panel bearing such claims.  *See* 21 U.S.C.

3   §§ 321(g)(1), 331(d), 343(f),[4] 343(r)(1)(B), 343(r)(6), 355(a); 21 C.F.R. § 101.93(d) ("On product

4   labels and in labeling (e.g., pamphlets, catalogs), the disclaimer shall appear on each panel or page

5   where there [is a structure/function claim].").

6   31.   The DSHEA Disclaimer must be prominent and bolded, and it must read:

7   **These statements have not been evaluated by the Food and Drug
    Administration. This product is not intended to diagnose, treat,
    cure, or prevent any disease.**

8

9   21 U.S.C. § 343(r)(6)(C); *see also* 21 C.F.R. § 101.93(b)-(e).

10   32.   To be prominent, the disclaimer may not be crowded with voluntary information or

11   imagery and additionally must be bolded font *at least* 1/16th of an inch in size.

12   33.   The disclaimer must appear on <u>all panels with structure/function claims</u>.  The Food

13   and Drug Administration has specifically rejected the proposition "that repetition of the disclaimer

14   on every panel or page where a statement [is] made…is unnecessary."  62 Fed. Reg. 49859, 49864.

15   To meet statutory requirements, "**the disclaimer must be within the same field of vision as the**

16   **statement itself**."  *Id.* at 49865 (emphasis added).

17   34.   Dietary supplements that do not bear the required DSHEA Disclaimer on **<u>all</u>** panels

18   with structure/function claims, and/or the disclaimer lacks the prominence required, are misbranded

19   and unlawful.  21 U.S.C. § 343(r)(1)(B), (r)(6); 21 C.F.R. § 101.93(d).

20   35.   Moreover, such products qualify as "drugs" under the FFDCA because they are

21   marketed with structure/function claims but do not include the DSHEA Disclaimer. *See* 21 U.S.C.

22   §§321(g)(1), 343(r)(6).  To avoid being regulated as drugs under the FFDCA, dietary supplements

23   bearing structure/function claims must comply with the DSHEA Disclaimer requirements. *Id*.

24   36.   Misbranded dietary supplements and/or unapproved drugs are unlawful and cannot

25   be sold legally under federal and identical California law.  21 U.S.C. §§ 331, 333.

26   [4] 21 U.S.C. § 343(f) ("If any word, statement, or other information required by or under authority
    of this chapter to appear on the label or labeling is not prominently placed thereon with such
27   conspicuousness (as compared with other words, statements, designs, or devices, in the labeling)
    and in such terms as to render it likely to be read and understood by the ordinary individual under
28   customer conditions of purchase and use.").

37.     The FDA has specifically warned Defendant that its products are governed by the above-described labeling requirements.

38.     Here, there is no required DSHEA disclaimer on the ConceiveEasy website.  Hence, consumers have no way to see it before purchasing the product.

39.     Although there is a disclaimer on the bottles, it can only be seen after the consumer has paid for and received them in the mail.  Even then, the disclaimer violates federal law because it is not prominently displayed, is buried in a mass of other, voluntary statements, and is less than 1/16th of an inch in size.

40.     Accordingly, ConceiveEasy products are drugs, as defined by section 201(g) of the Food Drug and Cosmetic Act, 21 U.S.C. 321(g), because they are intended to cure, mitigate, treat, or prevent disease and/or are intended to affect the structure or function of the body.  Moreover, these products are "new drugs" as defined by 201(p) of the Food Drug and Cosmetic Act, 21 U.S.C. 321(p), because they are not generally recognized as safe and effective for use under the conditions, prescribed, recommended, or suggested in their labeling.  Under section 505(a) of the FD&C Act, 21 U.S.C. 355(a), new drugs may not be introduced or delivered for introduction into interstate commerce without prior approval from FDA.   No approved application pursuant to section 505 of the FD&C Act, 21 U.S.C. 355, is in effect for these products. Accordingly, the introduction or delivery for introduction into interstate commerce of these products violates sections 301(d) and 505(a) of the FD&C Act, 21 U.S.C. 331(d) and 355(a).

41.     Given that the products are illegal to sell, Plaintiff and class members are entitled to a full refund.

**III.     ConceiveEasy Violates California's Automatic Renewal Laws**

42.     California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., was enacted to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof. Code § 17600 (statement of legislative intent). More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding

new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

43.    The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.  If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

> (3)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

44.    Section 17602(b) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

45.     The law also requires e-commerce sellers to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(c) provides:

> [A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *Id.*

46.     Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

47.     Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

48.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by

1    symbol ls or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof.

2    Code § 17601(c).

3    49.    Finally, Section 17603 of the ARL provides that where a "business sends any goods,

4    wares, merchandise, or products to a consumer, under a continuous service agreement or automatic

5    renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material

6    sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in

7    any manner he or she sees fit without any obligation whatsoever on the consumer's part to the

8    business[.]" Cal. Bus. & Prof. Code § 17603.

9    50.    There are four different ways that ConceiveEasy violates these laws:

10    (a)    ConceiveEasy fails to present the automatic renewal offer terms or

11    continuous service offer terms in a clear and conspicuous manner before the subscription or

12    purchasing agreement is fulfilled.  When a consumer purchases the product, the customer is first

13    asked to provide contact and credit card information, and then asked to press a "Place Order"

14    button to confirm the transaction.  The automatic renewal disclosure is shown on a different part of

15    the page that is not close to the "Place Order" button, in small, non-contrasting grey-on-grey font

16    that is easily overlooked, or would be seen after the "Place Order" button is pressed.

17    (b)    At no time during the transaction, is the customer told that by making a

18    purchase, they are affirmatively consenting to the agreement containing the automatic renewal

19    offer terms or continuous service offer terms.  For example, there is no disclosure stating that by

20    making a purchase, a consumer agrees to the website terms of service, or any provisions in the

21    terms of service pertaining to automatic billing.

22    (c)    The website does not have a clear and conspicuous explanation to consumers

23    about how to cancel the auto-renewal before they are charged.

24    (d)    After someone makes a purchase on the website, ConceiveEasy fails to

25    provide an acknowledgement that includes the automatic renewal offer terms or continuous service

26    offer terms, cancellation policy, and information regarding how to cancel in a manner that is

27    capable of being retained by the consumer.  In fact, ConceiveEasy never provides explicit

28    instructions how to stop automatic billing.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                10

**JURISDICTION AND VENUE**

28.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

29.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this judicial district.

30.      Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

31.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district.

**CLASS ACTION ALLEGATIONS**

32.     Class Definition: Plaintiff brings this class action on behalf of herself and as a class action on behalf of the following putative classes:

> (a) **Nationwide Class**:  All people in the United States who purchased ConceiveEasy.

> (b) **California Sub-Class**:  All people in California who purchased ConceiveEasy.

33.     Excluded from each of the above-listed putative classes are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; and (2) the Judges presiding over the Action and members of their families and judicial staff.

34.     Subject to additional information obtained through discovery, the foregoing class definitions may be modified or narrowed by an amended complaint, or at class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

35.     Members of the putative classes are so numerous that their individual joinder is impracticable.  Defendant claims that two million people have used its product.  The precise number of class members and their identities are unknown to Plaintiff sat this time but may be

determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

36.    Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to:

        (a)    whether Defendant committed the conduct alleged herein;

        (b)    whether Defendant's conduct constitutes the violations of laws alleged herein;

        (c)    whether Defendant's labeling and advertising alleged herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

        (d)    whether Defendant knew or should have known that the representations were false or misleading;

        (e)    whether Defendant's representations, concealments and non-disclosures concerning its products are likely to deceive the consumer;

        (f)    whether Defendant violated California's automatic billing laws;

        (g)    whether Plaintiff and the Class are entitled to actual damages and/or restitution

37.    The claims of the named Plaintiff are typical of the claims of the putative class members in that the named Plaintiff and the class members sustained damages as a result of Defendant's uniform wrongful conduct.

38.    Plaintiff is an adequate representative of the putative class because her interests do not conflict with the interests of the class members she seeks to represent; she retained competent counsel experienced in prosecuting class actions; and she intends to prosecute this action vigorously.  The interests of class members will be fairly and adequately protected by Plaintiff and her counsel.

39.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of class members.  Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and

1   multiplies the burden on the judicial system presented by the complex legal and factual issues of

2   this case.  Individualized litigation also presents a potential for inconsistent or contradictory

3   judgments.  In contrast, the class action device presents far fewer management difficulties and

4   provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a

5   single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure

6   that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>COUNT I</u>
**California's Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq* ("CLRA")**

7

8       40.     Plaintiff incorporates by reference and realleges each and every allegation contained

9   above, as though fully set forth herein.

10      41.     Plaintiff brings this claim individually and on behalf of members of the proposed

11  classes against Defendant.

12      42.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits

13  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses,

14  benefits, or quantities which they do not have or that a person has a sponsorship, approval, status,

15  affiliation, or connection which he or she does not have."

16      43.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits

17  "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods

18  are of a particular style or model, if they are of another."

19      44.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits

20  "[a]dvertising goods or services with intent not to sell them as advertised."

21      45.     Defendant violated these provisions by making the false and misleading statements

22  alleged in this complaint.

23      46.      As a result of Defendant's violations, Plaintiff and members of the subclass have

24  suffered damages because: (a) they would not have purchased the products on the same terms if

25  they knew that the products were not sold as advertised; (b) they paid a price premium for the

26  product due to Defendant's misleading conduct; and (c) the product does not have the

27  characteristics, ingredients, uses, or benefits promised.

28

47.     Before filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it violated the CLRA and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.

48.     Plaintiff seeks all available relief under the CLRA.

<u>COUNT II</u>
**Violation Of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

49.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.     Plaintiff brings this claim individually and on behalf of members of the proposed classes against Defendant.

51.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

52.     Defendant's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein, by violating DSHEA requirements as described above, and by violating California's automatic renewal laws.

53.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL because its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

54.     Defendant violated the "fraudulent" prong of the UCL by making false and misleading statements about its product, as described herein.

55.     Plaintiff has no adequate remedy at law because, apart from the unlawful prong of the UCL, there is no private right of action for violations of DSHEA or California's automatic billing laws.

56.     In addition, Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law

57.     Plaintiff seeks all available relief under the UCL.

## COUNT III
## Breach of Express Warranty

58.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.     Plaintiff brings this claim individually and on behalf of members of the proposed classes against Defendant.

60.     As the designer, manufacturer, marketer, distributor, and seller, Defendant expressly warranted that its products improve the chances of conception.

61.     However, ConceiveEasy products cannot provide any appreciable benefit to consumers, and do not optimize or enhance an individual's chances of conceiving.

62.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Class have been injured and harmed because: (a) they would they would not

have purchased the products on the same terms if the true facts were known about the product; (b) they paid a price premium for the products due to Defendant's promises that it would improve chances of conception; and (c) the products did not have the characteristics as promised by Defendant.

63.     Before commencement of this lawsuit, a pre-suit notice letter was served on Defendant which complied in all respects with U.C.C. § 2-607.  Plaintiff and the Class sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.

**COUNT IV**
**Unjust Enrichment**

64.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed classes against Defendant.

66.     Plaintiff and Class Members conferred benefits on Defendant by purchasing ConceiveEasy products.

67.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of Defendant's products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented that the products would provide consumers with enhanced and increased likelihood of conception.  This misrepresentation caused injuries to Plaintiffs and Class Members, because they would not have purchased the products if the true facts regarding the effectiveness of the products were known.

68.     Plaintiff seeks non-restitutionary disgorgement.

**PRAYER FOR RELIEF**

69.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff representatives of the putative classes and/or subclasses and Plaintiff's attorneys as Class Counsel.

B.   For an order declaring that Defendant's conduct as described herein violates the law;

C.   For an order finding in favor of Plaintiff and the putative classes on all counts asserted herein;

D.   For prejudgment interest on all amounts awarded;

E.   For an order awarding damages, statutory damages, restitution, and any other relief deemed appropriate;

F.   For injunctive relief as pleaded or as the Court may deem proper; and;

G.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  July 19, 2022                                        **BURSOR & FISHER, P.A.**

By:   */s/ Joel D. Smith*
                    Joel D. Smith

Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jsmith@bursor.com

*Attorneys for Plaintiff*